IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOLOMON L. WALKER, et al., | : | CIVIL ACTION NO. 1:05-CV-0963 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| HENKELS & McCOY and RUSSEL N. WHITSEL, | : | |
| Defendants | : | |

## MEMORANDUM

Presently before the court is the motion for summary judgment (Doc. 16), filed by defendant Henkels & McCoy ("Henkels"). For the reasons that follow, the motion for summary judgment will be granted in part and denied in part.

I. **Statement of Facts**[1]

The dispute in this case centers around an automobile accident that occurred on July 28, 2000. (Doc. 18, Ex. B at 1.) On that date, a car driven by plaintiff Solomon L. Walker, Sr. ("Walker, Sr.") was struck by a pickup truck driven by defendant Russel N. Whitsel ("Whitsel"). (Doc. 1, Ex. A ¶¶ 8, 12, 14; Doc. 2 ¶ 8, 12.) At the time of the accident, plaintiffs Shirley Walker, Solomon Walker, Jr., and Ricardo Woodson were passengers in the car driven by Walker, Sr. (Doc. 1, Ex. A ¶ 7.)

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiffs, the non-moving party. See infra Part II.

At all times relevant to this dispute, Whitsel was employed as a laborer for Henkels. (Doc. 18, Ex. A at 9, 15.) On the day of the accident, Whitsel was working at a remote job site in New Jersey. (Doc. 18 ¶ 1; Doc. 23 ¶ 1.) At around 3:00 p.m., Whitsel and his supervisor, Jeff Jenkins ("Jenkins"), left the job site to return to their hometown in central Pennsylvania. (Doc. 18 ¶ 1; Doc. 18, Ex. A at 24; Doc. 23 ¶ 1.) Jenkins was driving a Henkels vehicle that had been assigned to him by the company. (Doc. 18, Ex. A at 27; Doc. 22, Ex. A at 12.) Neither Whitsel nor Jenkins was paid for his time during the drive home. (Doc. 18 ¶ 3; Doc. 23 ¶ 3.) In fact, Whitsel admitted that he was "off the clock" the moment he left the job site. (Doc. 18 ¶ 4; Doc. 23 ¶ 4.)

Before arriving home, Whitsel and Jenkins stopped at a bar in Shirleysburg, Pennsylvania.[2] (Doc. 18 ¶ 5; Doc. 23 ¶ 5.) Several hours later, Jenkins asked his wife to drive him home because he believed he was "legally drunk." (Doc. 18 ¶¶ 7, 8; Doc. 23 ¶¶ 7, 8.) Before leaving the bar, Jenkins gave Whitsel the keys to the Henkels vehicle and told him to drive the vehicle home.[3] (Doc. 18 ¶ 9; Doc. 22, Ex. A

---

[2] According to Whitsel, this was the first occasion on which he had stopped at a bar on his way home from work during his employment at Henkels. (Doc. 18 ¶ 6; Doc. 23 ¶ 6.)

[3] Whitsel had been permitted to drive other Henkels vehicles in the past. (Doc. 18, Ex. A at 32-33.) In fact, Jenkins had authorized Whitsel to drive his assigned Henkels vehicle on several prior occasions. (Doc. 22, Ex. A at 16; Doc. 18, Ex. A at 18, 26-27.) However, Jenkins now contends that he was not authorized to permit Whitsel to drive his vehicle on the night of the accident. (Doc. 22, Ex. A at 13.)

at 13-14; Doc. 23 ¶ 9.)  At the time Jenkins gave Whitsel the keys, Jenkins believed that Whitsel did not look visibly drunk.  (Doc. 22, Ex. A at 24.)

When Whitsel left the bar, he backed the Henkels vehicle out of the parking lot and traveled several hundred feet down a township road before coming to a stop at the intersection of Route 522.  (Doc. 18 ¶ 11; Doc. 18, Ex. A at 35-36; Doc. 23 ¶ 11.)  According to Whitsel, he stopped at the stop sign and looked for oncoming traffic before pulling into the intersection.  (Doc. 18, Ex. A at 35-36.)  However, Whitsel failed to see plaintiffs' car traveling northbound on Route 522.  Whitsel pulled out directly in front of plaintiffs' car, striking it on the right side.[4]  (Doc. 18, Ex. A at 47; Doc. 18, Ex. B at 2.)

Blood tests conducted after the accident revealed that Whitsel's blood alcohol content was 0.249%.[5]  (Doc. 18 ¶ 12; Doc. 23 ¶ 12.)  Whitsel admitted that he knew he was inebriated before he got behind the wheel of the Henkels vehicle.  (Doc. 18 ¶ 10; Doc. 23 ¶ 10.)  Whitsel also admitted that he knew it was against Henkels policy to

---

[4] The accident occurred at approximately 11:37 p.m.  (Doc. 18, Ex. B at 1.)  Had Jenkins and Whitsel not stopped at the bar, they would have arrived home at approximately 6:00 p.m.  (Doc. 18, Ex. A at 25.)

[5] Whitsel ultimately pled guilty to driving under the influence of alcohol.  (Doc. 18, Ex. A at 40-41.)

operate a company vehicle under the influence of drugs or alcohol.[6] (Doc. 18 ¶ 16; Doc. 23 ¶ 16.) After the accident, Whitsel was discharged from his employment with Henkels, but Jenkins was not. (Doc. 18, Ex. A at 42.)

On April 28, 2005, plaintiffs filed a complaint in the Court of Common Pleas of Huntingdon County, Pennsylvania. (Doc. 1, Ex. A.) The complaint alleges that Whitsel was negligent in operating the Henkels vehicle. The complaint further alleges that Henkels should be held vicariously liable for Whitsel's actions because Whitsel was acting within the scope of his employment at the time of the accident. Finally, the complaint alleges that Henkels is liable under a theory of negligent entrustment. (Doc. 1, Ex. 1.) On May 12, 2005, Henkels removed the case to this court. (Doc. 1.)

Henkels filed a motion for summary judgment, alleging that Whitsel was acting outside the scope of his employment at the time of the accident and that Henkels had not negligently entrusted the vehicle to Whitsel. (Doc. 16.)[7] The motion has been fully briefed and is ripe for disposition.

---

[6] Henkels' Employee Safety Handbook provides, in pertinent part, as follows:

> No employee may report for work or remain on duty *or operate a company-owned vehicle* or other equipment while impaired by alcohol, drugs or other substances.

(Doc. 18, Ex. C at 89 (emphasis added)).

[7] Plaintiffs have filed a motion for entry of default (Doc. 19) against Whitsel, who has neither entered his appearance in this action nor filed an answer to plaintiffs' complaint as of the date of this memorandum. Plaintiffs' motion (Doc. 19) will be addressed by future order of court.

**II.     Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

**III.    Discussion**[8]

Henkels moves for summary judgment on plaintiff's claims of negligence and negligent entrustment.  The court will discuss each of these claims *seriatim*.

---

[8] Jurisdiction over all of the parties' claims is based on diversity of citizenship, see 28 U.S.C. § 1332, and none of the parties dispute the applicability of Pennsylvania law, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80 (1938); see also Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992) (noting that federal courts sitting in diversity must apply the substantive law of the state of the forum state).

A.    **Negligence**

Plaintiffs assert that Henkels should be held vicariously liable for the negligent acts of Whitsel. An employer may be held vicariously liable for the negligent acts of its employees if such negligent acts occurred: (1) during the existence of the employment relationship, and (2) within the scope of the employment relationship. Mauk v. Wright, 367 F. Supp. 961, 966 (M.D. Pa. 1973). Here, Henkels does not dispute that an employment relationship existed at the time of Whitsel's accident. Therefore, the court need only address the issue of scope of employment.

To be considered within the scope of employment, an employee's conduct must: "(1) be of the kind the actor was employed to perform; (2) occur substantially within the authorized time and space limits and (3) . . . be actuated, at least in part, by a desire to serve the master." Clegg v. Falcon Plastics, Inc., 174 F. App'x 18, 28 (3d Cir. 2006); see also Ismael v. Ali, 141 F. App'x 36, 44 (3d Cir. 2005). Even viewing the evidence in the light most favorable to plaintiffs, the court finds that a reasonable jury could not conclude that these three elements have been established in the action *sub judice*.[9]

---

[9] In Pennsylvania, whether an individual was acting within the scope of employment is a question of fact that is typically reserved for the jury. Mauk, 367 F. Supp. at 965 (citing Norton v. Ry. Express Agency, Inc., 412 F.2d 112, 114 (3d Cir. 1969)). If, however, no "reasonable inference from the facts supports the finding that the employee was acting in furtherance of the . . . [employer's] business," the issue may properly be decided by the court. Mauk, 367 F. Supp. at 966 (citing Pillo v. Jim Banes Ford, Inc., 189 A.2d 850, 851 (Pa. 1963)).

First, Whitsel's conduct was not of the kind he was employed to perform. Whitsel was employed as a laborer and not as a truck driver. (Doc. 18, Ex. A at 12, 15.) He had neither been assigned a company vehicle nor granted special permission to operate one on a regular basis. (Doc. 18, Ex. A at 20.) While it is true that several Henkels employees had permitted Whitsel to use company vehicles in the past, this is not enough to add truck driving to Whitsel's job duties or to subject Henkels to liability. Shuman Estate v. Weber, 419 A.2d 169, 174 (Pa. Super. Ct. 1980) ("[E]ven if an employer habitually allows his employee to use an instrumentality for personal use or gives express permission for him to do so, this fact will not, of itself, subject the employer to liability.").

Second, the accident did not occur "substantially within the authorized time and space limits" established by Henkels. See Clegg, 174 F. App'x at 28. Whitsel's accident occurred more than five and one-half hours after he should have arrived home from work and more than eight hours after he left the New Jersey job site. See Shuman, 419 A.2d at 173-74 (holding that an employee who deviated from his course of travel to stop at a tavern for eight hours was not acting within the scope of his employment because "deviations of this magnitude constitute an independent journey and signify abandonment of the employer's purpose"). Like the driver in Shuman, Whitsel deviated from his route of travel to frequent a local tavern. Id. at 174. Whitsel's decision to embark on such an "independent journey" took him well outside the scope of his employment.

Third, Whitsel's actions on the night of the accident were not motivated "by a desire to serve" Henkels. See Clegg, 174 F. App'x at 28. Whitsel's decision to consume alcohol was a personal one. See Atlantic States Ins. Co. v. Ne. Networking Systems Inc., 893 A.2d 741, 746-47 (Pa. Super. Ct. 2006) (affirming decision of workers' compensation referee that employee's consumption of alcohol took his actions outside the scope of his employment). Furthermore, when Whitsel chose to operate a company vehicle after consuming alcohol, he knew he was acting in contravention of company policy.[10] Id. at 746-47 (considering violation of employer's policy as a factor in determination of scope of employment).

In sum, Whitsel left the scope of his employment when he embarked upon his personal business of frequenting a tavern. See Shuman, 419 A.2d at 173 (holding that employee who "engaged upon a personal expedition in no manner connected with his master's business" was acting outside the scope of his employment). Therefore, Henkels cannot be held vicariously liable for his negligent act, and Henkels' motion for summary judgment will be granted with respect to this claim.

---

[10] See supra note 6. Not every act conducted in violation of company policy is outside the scope of employment. See RESTATEMENT (SECOND) OF AGENCY § 230 ("An act, although forbidden, or done in a forbidden manner, may be within the scope of employment."); see also Mautino v. Piercedale Supply Co., 13 A.2d 51, 54 (Pa. 1940) ("A master cannot avoid responsibility for the negligence of a servant by telling him to act carefully."). However, acts which are conducted "in direct hostility to, and in defiance of, positive orders of the employer concerning instrumentalities, places or things about or on which the employee has no duty to perform" are not within the scope of employment. Rox Coal Co. v. Workers' Comp. Appeal Bd., 768 A.2d 384, 392 (Pa. Commw. Ct. 2001).

**B.     Negligent Entrustment**

A claim of negligent entrustment requires proof that: (1) the owner of a vehicle permitted a third person to use that vehicle, (2) the owner knew or should have known that the third person was "likely to use the [vehicle] . . . in such a manner as to create an unreasonable risk of harm to others," and (3) the third person caused damage to the property or person of another. City of Phila. v. Beretta U.S.A. Corp., 277 F.3d 415, 422 n.9 (3d Cir. 2002). In the action *sub judice*, the parties do not dispute that Whitsel caused damage to the property or person of another. Therefore, the court need only address the first two elements.

With respect to the first element, it is clear that Jenkins entrusted his company vehicle to Whitsel. Jenkins admits that he gave Whitsel the keys to the vehicle and told him to "go ahead and take [the] pickup home." (Doc. 22, Ex. A at 13-14.) Turning to the second element, a question of fact remains as to whether Jenkins knew or should have known that Whitsel was likely to use the vehicle in a manner that posed an unreasonable risk to others. According to Jenkins, Whitsel did not look visibly drunk at the time he was entrusted with the vehicle. (Doc. 22, Ex. A at 24.) However, Jenkins had been drinking with Whitsel for several hours, and Jenkins believed himself to be "legally drunk." (Doc. 18 ¶¶ 7, 8; Doc. 23 ¶¶ 7, 8.) Viewing this evidence in the light most favorable to plaintiffs, a reasonable jury could conclude that Jenkins knew or should have known that Whitsel was intoxicated and would pose an unreasonable risk of harm to others if entrusted with a vehicle.

To impute liability for Jenkins' actions to Henkels, plaintiffs will be required to prove that Jenkins was acting within the scope of his employment when he negligently entrusted the company vehicle to Whitsel.  See Mauk, 367 F. Supp. at 966.  However, the court need not address this issue because Henkels has failed to raise it in support of their motion for summary judgment.  (See Doc. 17 at 6-7; Doc. 24 at 3-4.)  Therefore, Henkels' motion for summary judgment will be denied with respect to this claim.

## IV.   Conclusion

For the foregoing reasons, the court will grant the motion for summary judgment (Doc. 16) with respect to plaintiffs' claim of negligence against Henkels.  The motion for summary judgment will be denied in all other respects.

An appropriate order will issue.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        December 20, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SOLOMON L. WALKER, et al.,** : | **CIVIL ACTION NO. 1:05-CV-0963** |
| : | |
| **Plaintiff** : | **(Judge Conner)** |
| : | |
| v. : | |
| : | |
| **HENKELS & McCOY** and : | |
| **RUSSEL N. WHITSEL,** : | |
| : | |
| **Defendants** : | |

## **ORDER**

AND NOW, this 20th day of December, 2006, upon consideration of the motion for summary judgment (Doc. 16), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion for summary judgment (Doc. 16), filed by defendant Henkels & McCoy, is GRANTED in part and DENIED in part as follows:

1. Defendant Henkels & McCoy's motion (Doc. 16) for summary judgment is GRANTED with respect to plaintiffs' claim of negligence.

2. Defendant Henkel & McCoy's motion (Doc. 16) for summary judgment is otherwise DENIED. See FED. R. CIV. P. 56(c).

3. The Clerk of Court is directed to defer the entry of judgment until the conclusion of this case.

4. A revised pre-trial and trial schedule shall issue by future order of court.

                                                  S/ Christopher C. Conner
                                                  CHRISTOPHER C. CONNER
                                                  United States District Judge